# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles R. Norgle | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 4150 | **DATE** | 12/22/2004 |
| **CASE TITLE** | Coambes vs. Smurfit-Stone | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Smurfit-Stone's motion to dismiss count 1 [3-1]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Smurfit-Stone's motion to dismiss count I [3-1] is granted.

*/s/ Charles R. Norgle/*

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 28 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| X | Docketing to mail notices. | | | 12 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice | |
| | | | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARRY COAMBES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 04 C 4150 |
| v. | ) |
| | ) Honorable Charles R. Norgle |
| SMURFIT-STONE CONTAINER | ) |
| CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER



CHARLES R. NORGLE, District Judge

Before the court is Defendant Smurfit-Stone Container Corporation's Motion to Dismiss Count I. For the following reasons, Defendant's Motion to Dismiss Count I is granted.

## I. INTRODUCTION

### A. Facts

Plaintiff Harry Coambes ("Coambes"), born November 11, 1945, is a former employee of Defendant Smurfit-Stone Container Corporation ("Smurfit"). Smurfit manufactures corrugated packaging containers. Coambes began his employment with Smurfit in 1992, and worked in various sales positions, including manager of corporate sales. Coambes alleges that beginning in 2001, Smurfit began to place unreasonable pressures on its senior sales staff. These pressures were allegedly intended to cause senior sales staff over the age of fifty to either resign, or be fired for failing to meet new extraordinarily high sales goals. Smurfit, Coambes alleges, informed Coambes that if he did not double his yearly sales revenues, he would be terminated. In addition,

1

Coambes alleges that Smurfit subjected him to increasingly stressful criticism of his work. Partly as a result of these pressures, Coambes alleges, he developed heart disease.

Coambes sought medical care for his heart problems, and was advised by a physician to reduce his travel and workload. Coambes alleges that he presented Smurfit with written documentation from his cardiologist explaining the nature of Coambes' heart condition, and the necessity of a reduced workload. Nevertheless, Coambes alleges, Smurfit continued to insist that he double his yearly sales revenue, or face termination. Finally, Coambes alleges, Smurfit transferred sales accounts from Coambes to younger sales associates, making it virtually impossible for Coambes to meet his greatly increased sales goals. Coambes alleges that Smurfit's actions were done with full knowledge of his heart condition, and were done intending to cause Coambes so much stress that he would be forced to resign. Eventually, Coambes alleges, the combination of the stress and his heart condition did cause him to resign his position with Smurfit.

### B. Procedural History

On May 18, 2004, Coambes filed suit against Smurfit in the Illinois Circuit Court of Lake County. Count I of Coambes' Complaint alleges Intentional Infliction of Emotional Distress ("IIED"), Count II alleges a violation of the Americans with Disabilities Act ("ADA") and Count III alleges a violation of the Age Discrimination in Employment Act ("ADEA"). Smurfit removed the case to federal court, pursuant to 28 U.S.C. § 1441(a) and (c). Smurfit then filed a Motion to Dismiss Count I of Coambes' Complaint. Smurfit's Motion to Dismiss Count I is fully briefed and before the court.

## II. DISCUSSION

### A. Standard of Review

#### *1. Motions to Dismiss*

When reviewing a motion to dismiss under Rule 12(b)(6), the court merely looks at the sufficiency of the complaint, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 (2002); Autry v. Northwest Prem. Servs., Inc., 144 F.3d 1037, 1039 (7th Cir. 1998); it does not decide whether the plaintiff has a winning claim. Herdrich v. Pegram, M.D., 154 F.3d 362, 369 (7th Cir. 1998); see also McCormick v. City of Chicago, 230 F.3d 319, 323-26 (7th Cir. 2000) (analyzing Leatherman v. Tarrant County, 507 U.S. 163 (1993) and reversing the Rule 12(b)(6) dismissal of claims based on §§ 1981 & 1983); Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998) ("Complaints need not plead law or match facts to every element of a legal theory...."). Thus, "[a] complaint should not be dismissed for failure to a state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts to support his claim which would entitle him to relief." Smith v. Cash Store Mgmt., Inc., 195 F.3d 325, 327 (7th Cir. 1999) (citations and internal quotation marks omitted). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims . . . Rule 12(b)(6) should be employed only when the complaint does not present a legal claim." Id. "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." Swierkiewicz, 534 U.S. at 512. All well-pleaded facts are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff. See e.g. Jackson v. E.J. Brach Corp., 176 F.3d 971, 977-78 (7th Cir. 1999).

3

### 2. *Illinois Law Applies to Count I of Coambes' Complaint*

Coambes' IIED claim arises under Illinois law, and is "pendant" to Coambes' federal ADA and ADEA claims.

> Pendant jurisdiction . . . exists whenever there is a claim "arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority . . .," U.S. Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional "case."

United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966). "[F]ederal courts exercising pendant . . . jurisdiction must apply state law to matters of substantive law . . . ." Timmerman v. Modern Indus., Inc., 960 F.2d 692, 696 (7th Cir. 1992); see also Wilks v. Young, 897 F.2d 896, 899 n.5 (7th Cir. 1990). The court will therefore apply Illinois law to Coambes' IIED claim.

## B. Coambes' Claim of IIED

### 1. *The Illinois Human Rights Act Preempts Coambes' Claim of IIED*

The Illinois Human Rights Act ("IHRA") is intended to "secure for all individuals within Illinois the freedom from discrimination because of race, color, religion, sex, national origin, ancestry, age, marital status, physical or mental handicap, or unfavorable discharge from military service . . . ." 775 ILL. COMP. STAT. 5/1-102(A). The IHRA established the Illinois Human Rights Commission ("IHRC"), "an administrative body to adjudicate claims involving human rights." Id. at 5/8-101; Garcia v. Vill. of Mt. Prospect, 360 F.3d 630, 639 (7th Cir. 2004).

For the purposes of this case, the critical provision of the IHRA reads, "[e]xcept as otherwise provided by law, no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILL. COMP. STAT. 5/8-111(C). Illinois courts have consistently held that this provision of the IHRA divests courts of

jurisdiction to hear tort claims that are "inextricably linked" to alleged civil rights violations. Maksimovic v. Tsogalis, 687 N.E.2d 21, 22 (Ill. 1997); Geise v. Phoenix Co. of Chicago, Inc., 639 N.E.2d 1273, 1276-77 (Ill. 1994). In other words, tort claims that present "no independent basis for imposing liability" apart from civil rights violations are preempted by the IHRA. Maksimovic, 687 N.E.2d at 22; Geise, 639 N.E.2d at 1276-77. Such tort claims "must be litigated before the [IHRC] - and only before the [IHRC]." Maksimovic, 687 N.E.2d at 22. These tort claims are not "inextricably linked with a civil rights violation [only] where a plaintiff can establish the necessary elements of the tort independent of any legal duties created by the [IHRA]." Id. at 24. The Seventh Circuit has consistently interpreted Illinois law to mean that state law tort claims that depend on, or are "inextricably linked," to civil rights violations are therefore preempted by the IHRA. See Garcia, 360 F.3d at 639-640; Quantock v. Shared Mktg. Servs., 312 F.3d 899, 905 (7th Cir. 2002); Krocka v. City of Chicago, 203 F.3d 507, 516 (7th Cir. 2000); Westphal v. City of Chicago, 8 F. Supp. 2d 809, 811-812 (N.D. Ill. 1998).

In order to determine whether Coambes' IIED claim is preempted by the IHRA, the court must therefore inquire as to whether Coambes can establish the elements of IIED "independent of any legal duties created by the [IHRA]." Maksimovic, 687 N.E.2d at 24. Put another way, Coambes must show that his IIED claim is not "inextricably linked" to his civil rights claims. Id. at 22. This Coambes cannot do. In his IIED Count, Coambes alleges that Smurfit's new sales goals, and the accompanying pressures these goals placed on him were "brought to bear on senior members of the corporate sales staff," and that "[t]his was intended to cause their senior sales staff who were mostly over the age of 50 to resign their positions or face involuntary termination . . . ." Compl., ¶ 7. Coambes also alleges, in his IIED Count, that "[t]he conduct of Defendant .

5

. . was intended and calculated to cause the Plaintiff to resign his position due to his age and the perception of his disability." Id., ¶ 15.

In order to make out a claim of IIED, Coambes must show, *inter alia*, that Smurfit's conduct was "extreme and outrageous." McGrath v. Fahey, 533 N.E.2d 806, 809 (Ill. 1988). Coambes alleges that Smurfit's conduct was extreme and outrageous because he is over fifty years old and has a disability, and Smurfit was aware of this. Coambes cannot therefore establish the elements of IIED "independent of any legal duties created by the [IHRA]." Maksimovic, 687 N.E.2d at 24. Coambes' IIED claim is therefore "inextricably linked" to his civil rights allegations, and is thus preempted by the IHRA. See id. at 22; Geise, 639 N.E.2d at 1276-77.

### 2. *Coambes has Failed to Allege Extreme and Outrageous Conduct*

In order to make out a claim for IIED in Illinois, a plaintiff must show three things. First, "the conduct involved must be truly extreme and outrageous;" second, the defendant must either intend that its conduct create "severe emotional distress," or know that there is a "high probability that [its] conduct will cause severe emotional distress;" and third, the conduct must "in fact cause *severe* emotional distress." McGrath, 533 N.E.2d at 809. Illinois courts have explained that the emotional harm suffered must be quite serious, and that the conduct involved must be truly outrageous, in order to establish these elements. "The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." Id. (citing RESTATEMENT (SECOND) OF TORTS § 46, cmt. j) (1965)); Brackett v. Galesburg Clinic Ass'n, 689 N.E.2d 406, 409 (Ill. App. Ct. 1997). IIED "does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" McGrath, 533 N.E.2d at 809 (citing RESTATEMENT (SECOND) OF TORTS § 46, cmt. d) (1965)); Brackett, 689 N.E.2d at

409. The Seventh Circuit, when interpreting Illinois law on IIED, has followed and cited the McGrath court. See,e.g., Honaker v. Smith, 256 F.3d 477, 490-92 (7th Cir. 2001); Van Stan v. Fancy Colors, 125 F.3d 563, 567 (7th Cir. 1997).

In this case, Coambes asserts that Smurfit's imposition of very high sales goals onto senior sales staff, and Smurfit's conduct in reducing his workload (which, he asserts, made it impossible for him to meet those goals), was extreme and outrageous behavior. Illinois courts have found some employer behavior to be so extreme and outrageous as to rise to the level of IIED. See Pavilon v. Kaferly, 561 N.E.2d 1245, 1251 (Ill. App. Ct. 1990) (employer pressuring employee for dates, offering employee money for sex, and threatening to kill and rape employee was extreme and outrageous behavior); Milton v. Illinois Bell Tel. Co., 427 N.E.2d 829, 832-33 (Ill. App. Ct. 1981) (employer forcing employee to file false and unlawful work reports, thus subjecting the employee to potential criminal liability, was extreme and outrageous behavior).

Illinois courts, however, have generally not classified as "extreme and outrageous" actions taken by an employer for legitimate reasons, where those actions "did not go well beyond the parameters of the typical workplace dispute." Honaker, 256 F.3d at 491; see also Brackett, 689 N.E.2d at 408-09 (no extreme and outrageous behavior where a long-term employee was summarily terminated); Lundy v. Calumet City, 567 N.E.2d 1101, 1103 (Ill. App. Ct. 1991) (no extreme and outrageous behavior where employees were terminated after the results of employer-mandated psychological tests were made public). Here, Smurfit has implemented new performance standards that may well be very challenging to its sales staff. Smurfit may also have placed significant pressure on Coambes to meet these standards, while reducing his workload due to his doctor's orders. However, Smurfits actions do not rise to the level of "extreme and

7

outrageous behavior" under Illinois law, but rather fall within "the parameters of the typical workplace dispute." See Honaker, 256 F.3d at 491; Pavilon, 561 N.E.2d at 1251. Coambes has thus failed to allege that Smurfit engaged in extreme and outrageous behavior.

### III. CONCLUSION

Coambes claim of IIED is preempted by the IHRA. See Maksimovic, 687 N.E.2d at 24. In addition, Coambes has not alleged extreme and outrageous behavior on the part of Defendant Smurfit. See McGrath, 533 N.E.2d at 809. Accepting all well-pled facts as true, and drawing all inferences in a light most favorable to the Plaintiff, see Jackson, 176 F.3d at 977-78, Coambes thus "can prove no set of facts to support his claim which would entitle him to relief." See Smith, 195 F.3d at 327. Count I of Coambes' Complaint is therefore dismissed.

IT IS SO ORDERED.

ENTER:

*[signature]*

CHARLES RONALD NORGLE, Judge

United States District Court

DATED: 12-22-04